# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

JAVIER SALAZAR,

        Plaintiff,

        v.                           Case No. 07-CV-238

NANNETTE HEGERTY, CITY OF MILWAUKEE,
AGUSTIN MOLINA, CHAD WAGNER,
TIMOTHY BURKEE, MICHELLE FORMOLO
and RODNEY KLOTKA,

        Defendants.

## DECISION AND ORDER

The plaintiff filed this *pro se* civil rights complaint under 42 U.S.C. § 1983 and is proceeding *in forma pauperis* on claims under the Fourth Amendment for unlawful arrest and false imprisonment, as well as a claim that the City of Milwaukee has an unconstitutional policy of issuing arrest warrants without probable cause. In April 2008, the defendants filed a motion for summary judgment, which was denied as moot when the court granted the plaintiff's motion to file an amended complaint. Now before the court are the parties' cross-motions for summary judgment. Additionally, the plaintiff has filed a motion for leave to file a belated reply brief, and the defendants have filed a motion to strike the plaintiff's reply to his proposed findings of fact. All pending motions will be addressed herein.

## RULES REGARDING PRO SE LITIGANTS

In *pro se* litigation, when the opposing party files a motion for summary judgment, that motion must include a short and plain statement that any factual assertion in the movant's affidavits and documentary evidence will be accepted as true unless the *pro se* litigant submits his own affidavits or other documentary evidence contradicting the factual assertions. Civil L.R. 56.1 (a) (1) (E.D. Wis.). Additionally, the text of Fed. R. Civ. P. 56(e) and (f), Civil L.R. 56.1, Civil L.R. 56.2 and Civil L.R. 7.1 must be part of the motion. Civil L.R. 56.1 (a)(2) (E.D. Wis.). In this case, the defendants failed to provide the plaintiff with the text of Civil Local Rules 56.1 and 56.2 (E.D. Wis.) as part of their motions for summary judgment.

However, where no prejudice has occurred, the failure to give proper warnings may be excused. *See Sellers v. Henman*, 41 F.3d 1100, 1102 (7th Cir. 1994); *Timms v. Frank*, 953 F.2d 281, 286 (7th Cir.1992).

Before the defendants filed their current motion for summary judgment, the plaintiff filed a complete motion for summary judgment of his own, including a motion, a brief, a response to the defendants' earlier proposed findings of fact, his own proposed findings of fact, and an affidavit. The plaintiff also later replied to the proposed findings of fact the defendants filed as part of their current motion for summary judgment. Thus, the plaintiff did not lose the opportunity to put forth facts in opposition to defendants' motion for summary judgment. The court concludes that

2

the defendants' failure to provide copies of all of the applicable rules did not result in prejudice and will excuse defendants' failure to give proper warnings.

## MOTIONS REGARDING SUMMARY JUDGMENT MATERIALS

Shortly after the time expired for the plaintiff to respond to the defendants' motion for summary judgment, he filed a motion for leave to file a belated reply brief. He cites his confusion regarding whether the defendants' earlier motion for summary judgment was still pending as good cause to allow a late reply brief. He also argues that the defendants would not be prejudiced by his late reply brief. The defendants filed a response indicating that they did not object to the plaintiff's belated reply brief. The court will grant the plaintiff's motion.

In addition to his motion for leave to file a belated reply brief, the plaintiff filed a reply regarding his proposed findings of fact. The defendants have filed a motion to strike the plaintiff's reply to his proposed findings of fact. They argue that the local rules do not provide for any type of reply with regard to proposed findings of fact. They also contend that the plaintiff's "replies" do not reply to any new factual information and, instead, continue to argue the points raised in the plaintiff's initial proposed facts.

The defendants acknowledged in response to the plaintiff's motion for leave to file a belated reply brief that the brief also served as a response to the defendants' motion for summary judgment. As such, the plaintiff could have filed another response to the defendants' proposed findings of fact that were part of their pending

3

motion for summary judgment (versus their earlier motion). The court will deny the defendants' motion to strike and consider the plaintiff's reply. However, to the extent that the document does not contain admissible evidence, the court will consider it as part of the plaintiff's argument regarding the cross-motions for summary judgment.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show . . . no genuine issue as to any material fact . . . and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The mere existence of some factual dispute does not defeat a summary judgment motion. Instead, "the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,248 (1986) (emphasis in original). For a dispute to be genuine, the evidence must be such that a "reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmovant. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), *Bethlehem Steel Corp v. Bush*, 918 F.2d 1323, 1326 (7th Cir. 1990). However, a court is "not required to draw every conceivable inference from the record – only those inferences that are reasonable." *Bank Leumi Le-Isreal, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir. 1991) (citing *Spring v. Sheboygan Area School Dist.*, 865 F.2d 883, 886 (7th Cir. 1989)).

4

The moving party bears the initial burden of showing that there are no material facts in dispute and that he is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A defendant moving for summary judgment may satisfy this initial burden by pointing to the plaintiff's failure to introduce evidence sufficient to support the cause of action alleged. *Id.* at 325. Once the moving party meets its initial burden, the nonmoving party must "go beyond the pleadings" and designate specific facts to support its cause of action, showing a genuine issue for trial. *Id.* at 322-25.

When the moving party does not bear the burden of proof at trial, he can prevail on a motion for summary judgment by showing that there is an absence of evidence to support any essential element of the non-moving party's case. *Celotex Corp.*, 477 U.S. at 322-23. However, where the moving party bears the burden of proof at trial, he can prevail only by proving every element of his case with evidence so compelling that no reasonable jury could return a verdict for the non-moving party. *See Anderson*, 477 U.S. at 248; *Select Creations, Inc. v. Paliafito America, Inc.*, 911 F. Supp. 1130, 1149 (E.D. Wis. 1995).

## BACKGROUND

On September 8, 2003, Daniel Sass complained that he was the victim of an armed robbery near his home on South 17th Street in Milwaukee, Wisconsin. (Defendants' Proposed Findings of Fact ("DPFOF"), ¶ 5). Sass described the suspect as a dark-complected Hispanic male, in his late teens or twenties,

5

approximately 5 feet 6 inches tall, weighing approximately 140-150 pounds, with long black hair in a pony tail. *Id.* at ¶ 6. Sass told police officers that the suspect was wearing a dark blue jersey-type shirt, with white numbers and/or letters on the front and on the shoulders, dark blue jean shorts, which extended past his knees, white socks, and a dark blue bandana with a white design on it over his mouth and nose. *Id.* at ¶ 13.

Earlier that day, Officer David Martinez of the Milwaukee Police Department had observed the plaintiff, Javier Salazar, who he knew from prior police contact, riding his bicycle on Lincoln Avenue, near the scene of the robbery. *Id.* at ¶¶ 14-15. Officer Martinez observed the plaintiff wearing clothes that fit the description Sass provided and knew that the plaintiff matched the physical description provided by Sass. *Id.* at ¶ 14.

Based on the descriptive information provided by Sass and Officer Martinez, the Milwaukee police officers investigating the crime believed that the plaintiff might have been the perpetrator of the crime. *Id.* at ¶ 16. They alerted other officers of the results of their investigation. *Id.*

While on patrol on September 16, 2003, defendant Rodney Klotka, a Milwaukee police officer, saw the plaintiff in the front yard of a residence on South Layton Boulevard in Milwaukee, Wisconsin. *Id.* at ¶ 17. Officer Klotka knew the plaintiff from prior investigations and arrested the plaintiff without incident. *Id.* at ¶¶ 17-18, 23-24. He had no further contact with the plaintiff after he was booked on

September 16, 2003. *Id.* at ¶ 28. None of the other defendants had any personal involvement in the arrest of the plaintiff or his detention. *Id.* at ¶¶ 26, 29, 31.

According to Officer Klotka, he had received information from other Milwaukee police officers relative to the investigation of the armed robbery of Sass. *Id.* at ¶ 19. He believed that the plaintiff was suspected of being the perpetrator of the crime against Sass: (1) based upon the investigation conducted by fellow Milwaukee police officers; and (2) because the description Sass provided matched the description of the plaintiff, which was provided by another Milwaukee police officer who observed the plaintiff prior to the armed robbery at a location near where the crime had occurred. *Id.* at ¶¶ 20-21. Officer Klotka relied upon information provided by the investigating officers, who he believed to be credible and reliable sources of information. *Id.* at ¶ 22. Officer Klotka also knew, based on his training with the Milwaukee Police Department, as well as the guidelines from the State of Wisconsin Law Enforcement Standards Board, "that a police officer may effect the arrest of an individual when he has probable cause to believe the individual may have committed a crime, and that an officer may rely on the investigatory work and statements of other officers in making the probable cause determination." *Id.* at ¶ 25.

In contrast, the plaintiff avers that the arrest was based on a felony suspect information report that had been entered into the NCIC. (Affidavit of Javier Salazar, ¶ 2). The sworn discovery responses attached to the plaintiff's affidavit contain a number of responses explicitly denying that the plaintiff's arrest was based on a

7

temporary felony warrant. (Affidavit of Javier Salazar, Exhibits). In the responses, the defendants repeatedly state that the plaintiff was arrested because probable cause existed to conclude that he had committed a felony, by being the perpetrator of the armed and masked robbery of Sass. *Id.*

The Milwaukee Police Department Felony Suspect Information Report states the following as probable cause for the arrest of the plaintiff:

> After officer broadcasted the description of the actor, P.O. Martinez recalled seeing a subject who matched the description and clothing earlier before in the area. Victim picks out Salazar as a person who he had seen in the neighborhood almost every day and believes Salazar had robbed him. Salazar was masked, and ADA Potter wants Salazar questioned and wants the victim to appear in the DA's office to explain.

(Affidavit of Javier Salazar, Exhibits).

The plaintiff has also provided a copy of Detective Molina's report regarding the armed robbery. As part of the "Statement of Victim Daniel L. Sass," the report states:

> Daniel stated the actor, based upon the subject's hair length and physical description, could possibly be a subject that hangs around in the neighborhood. Daniel stated he has seen this subject that he has in mind almost every day this past summer and this subject hangs around the 17th and 16th St. area.

*Id.* Later, the report indicates that Detective Molina,

> showed photo array #14950 to the victim, DANIEL SASS and at that time he picked out the subject in the fourth position, Javier SALAZAR. Daniel stated this is the subject he had seen almost every day all summer but he had never seen this subject wearing a blue jersey as he had seen on the actor today. Daniel stated this subject SALAZAR has hair past the shoulders and it's wavy. Daniel stated he couldn't say for

8

sure if this person in the fourth position is the person who had robbed him.

*Id.* (Capitalization in original).

The plaintiff also submits that any information from Officer Martinez constitutes inadmissible hearsay and that the report itself contained deliberate false statements, or showed a reckless disregard for the truth. (Plaintiff's Response to Defendants' Proposed Findings of Fact, ¶¶ 10-12, 19).

## DISCUSSION

The plaintiff argues that he is entitled to summary judgment because he was arrested without probable cause. He contends that the basis for his arrest was a felony suspect information report that contained false statements or, alternatively, showed a reckless disregard for the truth. The plaintiff submits that there would be no probable cause for his arrest if the felony suspect information report is excluded. He further maintains that the use of temporary felony warrants is unconstitutional because it does not involve a judicial determination of probable cause.

The defendants also argue that they are entitled to summary judgment on the plaintiff's claims. They submit that Officer Klotka had probable cause to arrest the plaintiff and, in any event, Officer Klotka is entitled to qualified immunity relative to the plaintiff's arrest. The defendants also argue that former Police Chief Nannette Hegerty is not a proper party to this action and that the plaintiff was not unlawfully detained by any of the defendants. Further, the defendants contend that there was no causal connection between the temporary felony warrant issued for the plaintiff

9

and his subsequent arrest by Officer Klotka. They argue that the policy of the Milwaukee Police Department is that an officer has probable cause to arrest a subject when the officer has reliable information which causes him to believe that a subject has committed a crime and, because that is a lawful standard, the plaintiff's policy claim fails. The defendants also maintain that the plaintiff has presented only evidence regarding his own arrest and that a single incident is not an adequate basis for inferring an unlawful policy.

## I.   FOURTH AMENDMENT CLAIMS

### A.   Unlawful Arrest

In order to prevail on a claim of an unlawful arrest in violation of the Fourth Amendment, the plaintiff must show that he was arrested without probable cause; probable cause is an absolute defense to such a claim. *Williams v. Rodriguez*, 509 F.3d 392, 398 (7th Cir. 2007). The Seventh Circuit recently set forth the standard for probable cause:

> A police officer has probable cause to arrest a person if, at the time of the arrest, the "facts and circumstances within the officer's knowledge ... are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979). In ascertaining whether an officer had probable cause, the court is to view the circumstances from the perspective of a reasonable person in the position of the officer. *Chelios*, 520 F.3d at 686. The jury must determine the existence of probable cause "'if there is room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them.'" *Sornberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1013-14 (7th Cir. 2006) (quoting *Maxwell v. City of Indianapolis*, 998 F.2d 431, 434 (7th Cir. 1993)). Only if the underlying facts claimed

10

> to support probable cause are not in dispute may the court decide
> whether probable cause exists. *Maxwell*, 998 F.2d at 434.

*Gonzalez v. City of Elgin*, No. 08-2658, 2009 WL 2525565, at *9 (7th Cir. Aug. 20,

2009). Probable cause "does not require evidence sufficient to support a conviction,

nor even evidence demonstrating that it is more likely that not that the suspect

committed a crime." *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008) (quoting

*United States v. Sawyer*, 224 F.3d 675, 679 (7th Cir. 2000)).

The plaintiff contends that information received from Officer Martinez is non-

admissible hearsay and is insufficient to support a proposed finding of fact. He

argues that what Officer Martinez relayed to other officers regarding Javier Salazar

possibly being the perpetrator of the robbery of Sass is non-admissible hearsay.

However, this would undermine the efficacy of law enforcement agencies. If officers

were bound only by their personal knowledge and could not act on the information

and knowledge gained by other officers through observation and investigation, they

would be rendered impotent. Officers are free to exchange information, and an

officer may effect an arrest based on probable cause that resulted from information

shared amongst officers.

> As the Supreme Court explained in *United States v. Hensley*, 469 U.S.
> 221, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985), "'[e]ffective law
> enforcement cannot be conducted unless police officers can act on
> directions and information transmitted by one officer to another and that
> officers, who must often act swiftly, cannot be expected to cross-
> examine their fellow officers about the foundation for the transmitted
> information.'" *Id.* at 231, 105 S.Ct. at 682 (quoting *United States v.
> Robinson*, 536 F.2d 1298, 1299 (9th Cir. 1976)). Therefore, so long as
> "the facts and circumstances within [an agency's collective] knowledge

... warrant a prudent person in believing that the [suspect] had committed or was committing an offense," *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964), an officer of that agency, acting in good-faith reliance on such "facts and circumstances," has probable cause to effectuate an arrest. *See Hensley*, 469 U.S. at 232, 105 S.Ct. at 682 (1985).

*Tangwall v. Stuckey*, 135 F.3d 510, 517 (7th Cir. 1998).

The plaintiff also insists that he was arrested pursuant to the issuance of a temporary felony warrant generated by Detective Agustin Molina and assigned incident number 03-252-3008. He submits that other defendants were involved in the creation of the temporary felony warrant. However, the plaintiff's insistence that he was arrested based on a temporary felony warrant is argument, not evidence.

All of the evidence presented by the defendants, including their discovery responses, which were filed by the plaintiff, reinforces the defendants' position that no temporary felony warrant existed for the plaintiff at the time of his arrest. The evidence indicates that the temporary felony warrant remains active for only 72 hours and then expires. The plaintiff was arrested far more than 72 hours after the temporary felony warrant was entered. The plaintiff's affidavit is not sufficient to contradict the defendants' evidence that the temporary felony warrant had expired and was not the basis of the plaintiff's arrest. The plaintiff does not have personal knowledge or documentary or testimonial evidence that a temporary felony warrant was the basis of his arrest. The court is not in the position to consider the legality of temporary felony warrants because the admissible evidence in the record

12

indicates that Officer Klotka's arrest of the plaintiff was not based on the temporary felony warrant.

The plaintiff also argues vehemently that the felony suspect information report, which seems to be a means for officers to share information, is unconstitutional and contains deliberate lies or a reckless disregard for the truth. He compares the statement attributed to Sass in Detective Molina's report and the language of the felony suspect information report. In his report, Detective Molina states that Sass stated that the actor "could possibly be a subject that hangs around in the neighborhood," and that Sass picked out the plaintiff in a photo array, but Sass "couldn't say for sure if this person in the fourth position is the person who had robbed him." (Affidavit of Javier Salazar, Exhibits). The felony suspect information report states: "Victim picks out Salazar as a person who he had seen in the neighborhood almost every day and believes Salazar had robbed him." *Id.* They are not identical, but neither are they blatantly contradictory.

Even if there is a discrepancy, there is no admissible evidence to indicate that Officer Klotka arrested the plaintiff due to the felony suspect information report. Instead, his determination of probable cause to arrest was based on the fact that the description Sass provided matched the description of the plaintiff, and another officer observed the plaintiff near the crime scene prior to the crime wearing clothes that fit the description Sass provided of his attacker's clothing. The court concludes that the information Officer Klotka had at the time of the plaintiff's arrest constitutes probable

13

cause, and that Officer Klotka appropriately relied on information that resulted from the observations and investigation of other officers. As a result, the plaintiff's § 1983 claim for unlawful arrest is barred. *See Schertz v. Waupaca County*, 875 F.2d 578, 582 (7th Cir. 1989); *see also Williams*, 509 F.3d at 398.

Because of the finding of probable cause, the court need not consider whether Officer Klotka is entitled to qualified immunity relative to the plaintiff's arrest. However, the court notes that qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Thus, even if the court reached the issue of qualified immunity, it would be very difficult for the plaintiff to show in this case that Officer Klotka is not entitled to its protections. *Anderer v. Jones* 385 F.3d 1043, 1049 (7th Cir. 2004) (internal quotations omitted) ("[A]s long as a reasonably credible witness or victim informs the police that someone has committed, or is committing, a crime, the officers have probable cause to place the culprit under arrest, and their actions will be cloaked with qualified immunity if the arrestee is later found innocent.").

## B. False Imprisonment

The plaintiff was also allowed to proceed at screening on a Fourth Amendment claim for false imprisonment. Like his claim for unlawful arrest, probable cause bars this claim. *See Schertz v. Waupaca County*, 875 F.2d 578, 582 (7th Cir. 1989); *see also Williams*, 509 F.3d at 398.

14

Nevertheless, the plaintiff may have been able to pursue a Fourteenth Amendment claim based on the fact that he was detained for almost a week without an appearance before a magistrate for a judicial determination of probable cause. *See County of Riverside v. McLaughlin*, 500 U.S. 44, 56-57 (1991) (establishing 48-hour rule for probable cause hearings after warrantless arrests); *Gerstein v. Pugh*, 420 U.S. 103, 125 (1975). However, none of the defendants in this case were involved in that deprivation so they cannot be held liable under § 1983.

### C.    Personal Involvement

The defendants submit that, other than Officer Klotka, none of the defendants were personally involved with the plaintiff's allegations of unlawful arrest or false imprisonment. The plaintiff's claims arise under 42 U.S.C. § 1983, which provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Since a § 1983 cause of action is against a "person," in order "[t]o recover damages under § 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right." *Johnson v. Snyder*, 444 F.3d 579, 583 (7th Cir. 2006) (quoting *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)). In

Case 2:07-cv-00238-JPS   Filed 09/23/09   Page 15 of 17   Document 75

order to be personally responsible, an official "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." *Id.*

Because none of the defendants, other than Officer Klotka, were involved in the arrest or detention of the plaintiff, they are entitled to summary judgment on those claims. The plaintiff tries to hold them accountable for their roles in the temporary felony warrant, but that is not at issue here.

## II.     POLICY CLAIM

The plaintiff's final claim is a claim against the City of Milwaukee that it maintains an unconstitutional policy of issuing temporary felony warrants that do not have a judicial determination of probable cause. The plaintiff has failed to present evidence that he was arrested pursuant to a temporary felony warrant, or even specifically pursuant to the felony information suspect report. Thus, the court cannot consider the constitutional validity of temporary felony warrants. The defendants are entitled to summary judgment on this claim.

Accordingly,

**IT IS ORDERED** that the plaintiff's motion for summary judgment (Docket #59) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that the defendants' motion for summary judgment (Docket #65) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that the plaintiff's motion for leave to file belated reply brief (Docket #69) be and the same is hereby **GRANTED**; and

16

**IT IS FURTHER ORDERED** that the defendants' motion to strike plaintiff Javier Salazar's reply to his proposed findings of fact (Docket #74) be and the same is hereby **DENIED**.

The clerk of the court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 23rd day of September, 2009.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge

17